**E-FILED**
Wednesday, 30 November, 2005  05:07:13 PM
Clerk, U.S. District Court, ILCD

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
DANVILLE/URBANA DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>    Plaintiff,<br><br>v.<br><br>LARRY WASHINGTON,<br><br>    Defendant | No.: 05-CR-20025 |

### *COMMENTARY ON SENTENCING FACTORS*

NOW COMES the Defendant, LARRY WASHINGTON, and Richard H. Parsons, Chief Federal Public Defender for the Central District of Illinois, by and through TIFFANI D. JOHNSON, Assistant Federal Public Defender, and pursuant to 18 U.S.C. § 3553 respectfully submits this Sentencing Commentary.

A sentence of 2-years of probation with a condition that Mr. Washington complete an inpatient drug treatment program will provide "just punishment," 18 U.S.C. § 3553(a)(2)(A), but not more than necessary, to reflect the seriousness of this offense, to promote respect for the law, and to afford adequate deterrence. 18 U.S.C. § 3553(a)(2)(A), (B).

The advisory guideline range calls for 6 to 10 months of prison in Zone B of the sentencing table allowing for a sentence of probation that includes a condition that substitutes intermittent confinement, community confinement, or home detention for imprisonment. Mr. Washington notes, however, that if this Court sentences him to community confinement, there is no guarantee that he will be placed in community confinement that has drug treatment. If Mr. Washington is given

straight probation with an inpatient treatment condition, however, then he will definitely obtain the drug treatment that he needs.

Mr. Washington submits that the following information sets forth mitigating factors pursuant to § 3553 which would justify a sentence of straight probation.

I.   *Drug Addiction*

While on pretrial release, Mr. Washington checked himself into the Heritage Center in Decatur, acknowledging that he has a drug addiction. Shortly thereafter, he left the Heritage Center, but has been seeking drug treatment while living in Chicago, after a fire in his residential building left he and his family homeless. Mr. Washington recognizes that he could significantly benefit from an inpatient treatment program.

II.  *Education and Vocational Skills, Family Ties and Responsibilities*

Mr. Washington was born and raised in Chicago. His father, unfortunately, died of a heart attack when Mr. Washington was four years old; the elder Mr. Washington was only in his early 30s. His mother, Florence Washington, raised her family of ten children on Social Security income; they stayed with her mother much of Mr. Washington's childhood.

Although the family was poor, Mr. Washington recalls his childhood as "pretty good." He obtained decent grades, and never caused problems in school. He sang in a boys' chorus, did a paper route after his homework, and delivered groceries for the neighborhood A&P on the weekends. He shined shoes for a time, and in high school obtained a job housekeeping at the VA hospital, a job he held for over five years. He cajoled contacts at the Urban League for a job, and his persistence paid off with jobs in New York City over two summers (community service positions, inventorying

eyesores in vacant lots). He also worked for a Youth Development program at the Fillmore Police Station in Chicago.

Their poverty notwithstanding, the Washington family's bonds were strong. His siblings, notably, recall Mr. Washington, as a child and a young adult, being thoughtful, generous, and conscientious. His time, his home, and his money were offered freely to family members in need.

Mr. Washington left school in the 11th grade to begin a long career in industrial trades. He has worked with sheet metal, plumbing, pipe fitting, and boilers. Much of his career has been with the railroads in Chicago, where he was a long-time union member and official — indeed, he was chairman of Local 37 for some twenty years, and chaired the Interactive Management Committee for a number of years, addressing management and labor concerns in areas of efficiency, safety, employee moral, and communication. Mr. Washington left the railroad after severe on-the-job accidents in the railroad yards in the mid- to late-1990s left him with permanent and painful degenerative conditions in his lower back and legs. These health problems have been compounded by persistent high blood pressure. Mr. Washington continues to take medication for his blood pressure, and for pain relief.

Mr. Washington had three biological children, and he considers two other children, Michael Baggett and Tony Jackson, to be his stepsons. Unfortunately, he lost one of his daughters, Vicki, two years ago, when she was fourteen. A post-operative shunt had been placed to treat hydrocephalus, and Vicki was sent home too soon; she contracted an infection, which spread rapidly, and killed her before effective treatment could be undertaken. It is clear, when Mr. Washington recounts these events, that the memory still devastates him.

III.  *Civic, Charitable or Public Service, and Various Good Works*

In addition to his early Urban League service, and his union activities, Mr. Washington helped found and was on the board of Minority Workers of America from 1979 to 1999; this organization worked for the increased hiring of minorities and women at METRA, especially to positions such as engineer. From the mid-1980s to the late-1990s, he was a member of the South Austin Coalition of northwest Chicago. The Coalition was funded by the city, and engaged in projects such as tutoring and other involvement with high-risk children. It also spearheaded a class-action suit against a realtor for fraud in the use of government funds. From the early 1960s to the mid-1980s, Mr. Washington belonged to the Better Boys Foundation. He has also been a long-time member of the Mt. Olive Baptist Church. More recently, Mr. Washington has been commended for his assistance to the Haymarket Center in Chicago, in their AA, NA, and HIV/AIDS prevention programs.

IV.  *Aberrant Behavior*

Even the most unhealthy circumstances of life, of course, neither justify nor completely excuse an offense, but *are* relevant as mitigation, as evidence that "in fairness and mercy, may be considered as extenuating or reducing the degree of moral culpability," *Black's Law Dictionary* 1002 (6th ed. 1990) (defining "[m]itigating circumstances"), or as "[a] fact or situation that does not justify or excuse a wrongful act or offense but that reduces the degree of culpability and thus may reduce . . . the punishment [in a criminal case]." *Black's Law Dictionary* 236 (7th ed. 1999). Mr. Washington's life was anchored in labor and community involvement. The serious injuries he suffered in the 1990s ultimately took him from these things, from the engagements that had invested his life with meaning and himself with a sense of identity. The loss of these ties, arguably, isolated

4

him not merely from work, activities, and friends that had been central to his life for decades, but from the moral compass that, by all indications, had guided him reliably in a rich and productive life. It is obvious that Mr. Washington has suffered significant physical pain in the past decade; it is just as important to recognize that he has suffered the spiritual pain of separation from much that made his life meaningful (not to mention the spiritual pain of the loss of a beloved child). This is reflected in the erosion, in recent years, of his reliability in attending to family obligations. This is not to say that his conduct that resulted in these charges did not reflect bad judgment, nor that he should be absolved from the consequences of it. It is, however, fair to say that his conduct did not arise in a vacuum, and the Court's assessment of his moral culpability should reflect that recognition.

IV. *Substantial Assistance to Authorities*

Although it is not directly related to this case, and Mr. Washington does not seek a downward departure, he does asks that the Court be made aware of the fact that he has been coöperating with local police in their undercover drug operations, on a voluntary basis.

V. *Mr. Washington is Unlikely to be a Recidivist*

Mr. Washington has strong family support. His siblings have maintained contact with Probation, and have been very concerned about helping him address his drug problem. He has excellent tools for getting back on track once he completes his sentence. His family ties, and his underlying interest in bettering himself, all affirm a strong likelihood that Mr. Washington will not be a recidivist. Mr. Washington has, appropriately, been chastised by these proceedings, and understands that evasion of his obligations to the government will not go undetected or unpunished. He has the tools to keep himself on the straight and narrow path, and with proper guidance and support there is good reason to expect that he will do so.

Respectfully Submitted,

LARRY WASHINGTON, Defendant

RICHARD H. PARSONS  
Federal Public Defender

BY: _____s/Tiffani D. Johnson_____  
TIFFANI D. JOHNSON, Bar No. 6278909  
Assistant Federal Defender  
300 West Main Street  
Urbana, Illinois 61802  
Phone: (217) 373-0666  
Fax: (217) 373-0667  
Email: tiffani_johnson@fd.org

## CERTIFICATE OF SERVICE

I hereby certify that on November 30, 2005, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to Assistant United States Attorney Eugene L. Miller.

s/Tiffani D. Johnson  
_____  
TIFFANI D. JOHNSON, Bar No. 6278909  
Assistant Federal Defender  
300 West Main Street  
Urbana, Illinois 61801  
Phone: (217) 373-0666  
Fax: (217) 373-0667  
Email: tiffani_johnson@fd.org

I:\Johnson\CLIENTS\Washington, Larry\3553 commentary.wpd